### DE SHIELDS v. INSURANCE CO. OF NORTH AMERICA
#### (118 S. E., 817)

1. INSURANCE—BURDEN OF ESTABLISHING CONCURRENT INSURANCE ON INSURER.—In an action on a fire insurance policy defendant had the burden of proving its claim of other insurance, in violation of a provision of the policy.

2. INSURANCE—ADDITIONAL CONCURRENT INSURANCE .TO AVOID FIRE INSURANCE POLICY MUST BE VALID AND ENFORCEABLE.—Generally, to avoid a fire insurance policy because of additional concurrent insurance, such additional insurance must be valid and enforceable.

3. INSURANCE—SELLER OF AUTOMOBILE HELD NOT AGENT OF BUYER FOR PURPOSE OF TAKING OUT INSURANCE.—A provision in a conditional sales contract of an automobile, imposing on the buyer the duty to keep the car insured for not less than the amount due, and to protect the seller, and authorizing the seller "to place,

continue, and renew insurance for the buyer as the seller so elects,"
did not create the relationship of principal and agent between
the seller or his assignee and the buyer for the purpose of taking
out such insurance, so as to charge the buyer with knowledge of
additional insurance taken out by a commercial credit company as
assignee of the seller.

4. PRINCIPAL AND AGENT—WHERE GENERAL INTENTION TO CREATE
RELATION OF PRINCIPAL AND AGENT DOES NOT APPEAR, RELATION WILL
NOT BE CREATED.—Where a general intention to create an agency
does not appear, the relation will not be created, although there
existed some elements of the agency.

5. INSURANCE—FIRE INSURANCE POLICY HELD NOT FORFEITED, AS
MATTER OF LAW, BY ADDITIONAL INSURANCE.—Where the seller of
an automobile under a conditional sales contract, took out a policy
for the buyer thereon, with loss payable to the seller, and thereafter
assigned his contract to a commercial credit company, who also in-
sured the car under a master policy, *held,* in an action by the buyer
on the first policy which precluded a recovery, if there was other
insurance covering such loss "which would attach if this insurance
had not been in effect," that the policy had not, as a matter of law,
been forfeited for violation of this provision, since, if the additional
insurance was taken out without the knowledge of the buyer, or
covered only the insurable interest of the credit company, there
would be no violation.

6. INSURANCE—INSURER UNDER FIRE POLICY HELD TO HAVE AGREED
IN WRITING TO BE LIABLE, THOUGH PROPERTY WAS ENCUMBERED BY
LIEN OR MORTGAGE.—Where a fire insurance policy on an automobile
containing the provision that, "unless otherwise provided by agree-
ment in writing added hereto, this company shall not be liable for
loss or damage to any property insured hereunder while encumbered
by a lien or mortgage," also contained a provision that any loss
or damages payable thereunder should be paid to the vendor under
a conditional sales contract, *held* that the insurer had agreed in
writing to be liable though the property was encumbered.

7. INSURANCE—WHETHER THERE EXISTED A MISREPRESENTATION OF
MATERIAL FACT AVOIDING POLICY, HELD FOR JURY.—Where the
seller of an automobile, having accepted as part payment a note
and mortgage, secured a conditional sales agreement to be sub-
stituted for the note and mortgage, which he nevertheless still
retained, and thereafter wrongfully pledged as collateral and, when
insuring the car under authority of the owner, failed to disclose that
more than one mortgage existed against it, *held,* since the evi-
dence tended to establish that there was but one valid lien out-
standing, that the question whether there had been such conceal-
ment or misrepresentation as would avoid the policy was for the
jury.

8. INSURANCE—MISREPRESENTATIONS AS TO EXISTENCE OF OTHER INSUR-
ANCE HELD NOT, AS MATTER OF LAW, TO AVOID FIRE INSURANCE
POLICY.—Misrepresentations as to the existence of other insurance
made by the seller of an automobile at the time of insuring it for
the buyer *held* not, as a matter of law, such a fraudulent conceal-
ment as would work a forfeiture of the policy, where the evidence
tended to establish that additional insurance may not, in fact, have
been issued until later, or if issued, was secured by an assignee of
the seller without knowledge of the seller or the buyer.

9. INSURANCE—DIRECTED VERDICT FOR INSURER BECAUSE ASSURED'S IN-
TEREST HAD BEEN MISREPRESENTED OR CHANGED WITHOUT INSURER'S
CONSENT, HELD PROPERLY DENIED.—Where the evidence tended to
establish that at the time of insuring an automobile, the insurer
knew assured's interest was not unconditional and sole ownership,
and that there had been no change subsequent to issuance of the
policy, *held,* in an action on the policy, that a directed verdict on
the ground that assured's interest was not unconditional, and had
been assigned without consent of defendant, was properly denied.

10. INSURANCE—INTENTION AND MATERIALITY OF FALSE STATEMENTS IN
PROOF OF LOSS NECESSARY TO WORK FORFEITURE OF POLICY STATED.—
Generally, false statements in proofs of loss, in order to avoid a
policy, must have been made intentionally and willfully with intent
to deceive, and must be material.

11. INSURANCE—WHETHER STATEMENTS IN PROOF OF LOSS WERE FALSE
AND MADE WITH INTENT TO DECEIVE, HELD FOR JURY.—Whether
statements relating to the existence of other insurance made in proof
of loss under a fire insurance policy were false, material, or willfully
made with intent to deceive, *held* for the jury.

12. EVIDENCE—STATEMENTS AS TO VALUATION IN PROOF OF LOSS HELD
NOT TO PRECLUDE RECOVERY OF GREATER AMOUNT.—Statements as to
the value of a truck destroyed by fire, made in the proof of loss
and in contemplation of a settlement without suit, *held* not binding
on insured so as to preclude the recovery of a greater amount in an
action therefor, in the absence of any showing that the insurer had
been prejudiced by such statements.

13. APPEAL AND ERROR—DENIAL OF MOTION FOR NEW TRIAL HELD NOT
REVIEWABLE.—A lower Court's refusal of a new trial, unless
grounded on a basis of fact wholly without evidence to support
it, or manifestly controlled or influenced by error of law, is not
reviewable.

14. TRIAL—INSTRUCTION THAT POLICY PERMITTED MORTGAGING OF PROP-
ERTY INSURED HELD NOT ERRONEOUS AS INVADING PROVINCE OF
JURY.—In an action on an automobile fire insurance policy, an in-
struction which stated that the policy allowed the mortgaging of
the property, *held* not erroneous as invading the jury's province, in
view of the Court's duty to construe the policy.

Before WILSON, J., Greenwood, April, 1922.   Affirmed.

Action by J. D. De Shields against Insurance Company of North America.   Judgment for plaintiff and defendant appeals.

*Messrs. Dial & Todd* and *M. F. Sanders,* for appellant, cite: *Other insurance undisclosed avoids policy:* 83 S. C., 262; 14 R. C. L., Sec. 242.   *As does also undisclosed material fact:* 114 S. E., 543; 68 S. C., 378; 14 R. C. L., 1343, Sec. 515.   *Extent of notice from loss payable clause is for the jury:* 23 S. C., 190.   *Intentional withholding of material facts:* Ann. Cas. 1912–C, 597; 131 S. W., 189; 75 S. E., 915; 14 R. C. L., Secs. 203, 238, 242; 16 S. C. L., 232; 26 C. J., 183, 187; 14 L.R. A. (N. S.), 168.   *Ratification of other insurance by assured:* 14 R. C. L., Sec. 318; Ann. Cas. 1912–D, 63.

*Messrs. Jones & Harrison* and *Grier & Park* and *M. G. McDonald,* for respondent, cite: *No fraud where assured did not know of other insurance:* 106 S. C., 467; 61 S. C., 190; 1 Civ. Code 1912, Sec. 2719.   *Fraudulent mortgage is not encumbrance:* 14 R. C. L., 1063; 83 Ill., 303; 74 S. W., 406.   *No transfer of interest:* 26 C. J., Secs. 223, 286, pages 182, 234; 64 S. C., 413; 14 R. C. L., 1052.   *Intent to defraud necessary:* 26 C. J., Sec. 493, page 383; 14 R. C. L., 1343; 32 L. R. A. (N. S.), 453.   *Assured not bound by value in proof of loss:* 26 C. J., Sec. 491, page 381.   *No ratification without knowledge:* 21 R. C. L., 928. *Policy takes effect from date:* 14 R. C. L., 943; 26 C. J., Sec. 98, page 99.

September 13, 1923.

The opinion of the Court was delivered by MR. JUSTICE MARION.

Action on a policy of insurance issued to the plaintiff, De Shields, by the defendant, the Insurance Company of North America, on August 12, 1920, covering, against loss or

damage by fire, one Nash truck in the sum of $2,450.00, for a period of one year. From judgment on verdict for the full amount of the policy, with interest, the defendant appeals.

Recovery on the policy was resisted by defendant upon the grounds (answer) that without the knowledge or consent of defendant, and in violation of the terms of the policy, (1) the insured had taken out other insurance on the property, which was in force at the time of loss; (2) had, prior to the loss, incumbered the property with a conditional sales contract or chattel mortgage; (3) had assigned the policy; and (4) had made false statements in the proofs of loss. All of the exceptions, save one, are directed to assignment of error in the refusal of the trial Judge to grant defendant's motions for a directed verdict and for a new trial, based substantially upon the grounds indicated.

There was evidence tending to establish the following facts: The plaintiff, De Shields, bought a Nash truck from the Southern Auto & Supply Company, hereinafter called the Supply Company, of Greenwood, S. C., for $2,950.00, paying $950.00 on the purchase price, and giving his note bearing interest at 8 per cent. per annum, secured by mortgage on the truck, both dated June 28, 1920, for the balance, to be due December 31, 1920. Shortly thereafter plaintiff, at the request of the Supply Company, executed and delivered to it a substitute paper to evidence and secure this unpaid balance of purchase money. This was a "conditional sales agreement," dated July 31, 1920, providing for payment in 12 monthly installments, which was given in lieu of the first note and mortgage, and in full satisfaction thereof. De Shields several times requested the delivery to him of the first note and mortgage, as promised and agreed by the Supply Company, but was put off with various excuses. The Supply Company placed the Conditional Sales Agreement with the Commercial Credit Company, of Baltimore,

and assigned its interest therein as of date July 31, 1920. This, however, was not an assignment without recourse. On August 7, 1920, the Supply Company placed plaintiff's original note and mortgage with the American Bank of Greenwood, as collateral security to a loan. At the time of the purchase, the plaintiff had verbally authorized the Supply Company to take out insurance on the truck for $2,450.00, and had paid to it the amount of the premiums. Before the conditional sales agreement was executed, plaintiff was told by White, president of the Supply Company, that the insurance had been taken out, as directed, in the defendant, Insurance Company, and that the Supply Company held the policy. On August 12, 1920, at the request of the Supply Company, the policy in suit was issued by the defendant to the plaintiff, payable to the Supply Company as its interest might appear.

The policy was issued upon information, furnished by the Supply Company, to the effect that the truck had been sold that month to De Shields, "that they had a purchase money mortgage over it," and that the loss payable clause should be made to the Supply Company. The policy, however, did not come into the plaintiff's possession until some time in the fall. The plaintiff made various payments on his only *bona fide* outstanding obligation, the conditional sales agreement, all, except one of which, was made through White, the president of the Supply Company. On February 14, 1921, the truck in the possession of the plaintiff at Waterloo, S. C., was destroyed by a fire, which also destroyed plaintiff's barn and contents, upon which he had no insurance.

After the fire, the plaintiff learned, for the first time, that the World Auxiliary Insurance Corporation claimed to have written a policy on the truck, at the instance of the Commercial Credit Company. The plaintiff first signed a proof of loss prepared by an adjuster, who, it seems, rep-

resented the World Auxiliary Insurance Corporation.   He afterward signed a proof of loss prepared for the defendant, Insurance Company of North America.  Plaintiff testified that, when the first adjuster came, he did not know the adjuster represented the World Auxiliary Insurance Corporation, that he thought he was signing proof of loss for the policy he had, and that he had made no claim against the World Auxiliary Corporation.

There was evidence tending to establish that the Commercial Credit Company, of Baltimore, held a master policy, dated July 17, 1920, in the World Auxiliary Insurance Corporation, protecting the Credit Company against loss by fire, etc., as to all machines by it reported to that corporation.   When a machine which the Credit Company desired to have covered was insured, a certificate was issued in duplicate, and the original and duplicate sent by the Insurance Corporation to the Credit Company.   One of these certificates, called "customer's copy," covering this Nash truck, according to a representative of the Credit Company, was mailed to the plaintiff, De Shields, on August 26, 1920. Plaintiff denied receiving such copy.   The certificate purports to have been issued "to Commercial Credit Company, of Baltimore, Maryland, your automobile," etc., described as "Nash," etc., "purchased month July," etc., "actual cost, including equipment, $3,120," etc., insuring against loss or damage by fire, etc., for period of one year beginning 31st of July, 1920, with loss payable "to Commercial Credit Company, of Baltimore, Maryland, and others as interest may appear for the account of all interests."   The conditional sales agreement, given by plaintiff to the Supply Company, and by it assigned to the Commercial Credit Company, contained the following stipulation: "Buyer (De Shields)  *  *  *  agrees to keep the car insured against loss by fire and theft with insurance company acceptable to seller (the Supply Company), for not less than the amount

owing, and until fully paid, and payable to, and to protect
the interest of the seller, and the seller may place, continue,
and renew said insurance for the buyer, at the buyer's ex-
pense, if the seller so elects."

Appellant's first contention (exception 1) is that the
trial Court should have directed a verdict upon the ground
that, "the uncontradicted testimony shows conclusively
that at the time of the loss, the truck was covered by
another policy of insurance in violation of the express
provision of the policy sued upon." The pertinent stipu-
lation of the policy is as follows:

"No recovery shall be had under this policy, if at the
time a loss occurs there be any other insurance covering
such loss, which would attach if this insurance had not
been effected."

Whether at the time of the fire the loss was cov-
ered by other insurance, which would have attached
"if this insurance had not been effected," involved
a mixed question of law and fact, in dispute under the gen-
eral issue joined, and as to which, the burden of proof rested
on the defendant. The credibility of the testimony, tend-
ing to establish that the policy in the World Auxiliary
Insurance Corporation had been taken out, and was out-
standing at the time of the loss, was for the jury, and not
for the Court. But in the view that the evidence was sus-
ceptible of no other reasonable inference than that such
policy was in existence, there was evidence to th effect that
liability thereon was denied, generally by th World Aux-
iliary Insurance Corporation. Construing this clause of
the policy as to additional insurance most strongly against
the insurer, as the general rule requires, it was incumbent
on the defendant to establish affirmatively that the alleged
additional insurance would have "attached" if the policy
here in question had not been taken out. If such additional
insurance was invalid, for reasons other than the fact that

this insurance had been effected, it could not be held that it attached to cover the loss within the purview of the prohibition contained in the policy.

As a general rule, "to avoid a policy on account of additional insurance, the additional insurance must be valid and enforceable." 26 C. J., 261 § 326. Nor, it seems, would a policy for additional insurance, voidable at the option of the insurer for reasons other than the existence of other insurance, which the insurer has elected to declare void, be such other insurance covering the loss as "would attach if this insurance had not been effected," within the prohibition of the policy. See 26 C. J., 261, § 326. *Behrens v. Germania Fire Insurance Company,* 64 Iowa, 19; 19 N. W., 838. *Hubbard v. Hartford Fire Insurance Company,* 33 Iowa, 325; 11 Am. Rep., 125, and *Sweeting v. Mutual Fire Insurance Company,* 83 Md., 63; 34 Atl., 826; 32 L. R. A., 570. In this view, it would seem clear that whether the alleged additional insurance "would have attached if this insurance had not been effected," involved disputed issues of fact which could not have been determined by the trial Judge, without invading the province of the jury.

But forfeiture of the policy under this provision was also contested by respondent in the Court below upon the grounds (1) that the alleged additional insurance was obtained without the plaintiff's knowledge and consent, and (2) that it covered the separate and distinct insurable interest of the Commercial Credit Company as mortgagee and, hence, did not constitute such double insurance as would avoid the policy. See 26 C. J., page 260, § 325; page 264, §§ 330, 331. The Circuit Judge charged the law substantially in accordance with the foregoing contentions of the plaintiff, and from the law as thus charged defendant has not appealed.

Appellant's position in this aspect of the case, therefore, resolves itself into the proposition that under the written authority contained in the conditional sales agreement, insurance effected by the Commercial Credit Company, as assignee of this agreement, could not be insurance effected without the knowledge and consent of the plaintiff.

The contention is apparently rested on the theory that the insurance clause in the mortgage contract created the relationship of principal and agent, and that the knowledge of the mortgagee in obtaining insurance, pursuant to the authority granted, was the knowledge of an agent which was imputable to the mortgagor as principal. We do not think that position is tenable. A mortgagee has an insurable interest in the mortgaged property, but he may not, in the absence of an express agreement, require the mortgagor to insure for his benefit, or himself insure the property at the mortgagor's expense. 19 R. C. L., 404, § 183. The provision of the contract here under consideration imposed on the buyer (mortgagor) the duty to keep the car insured "for not less than the amount owing—and to protect the interest of the seller (mortgagee)," and authorized the seller (mortgagee) to "place, continue, and renew insurance for the buyer (mortgagor) if the seller (mortgagee) so elects." The patent object was not to clothe the mortgagee with authority to represent the mortgagor as agent in effecting insurance, but to charge the mortgagor with liability as between the contracting parties for the cost of insurance which the mortgagee, by virtue of the relationship of lien creditor and debtor, might elect to take out "to protect" his own insurable interest.

Where a "general intention to create an agency does not appear, the relation will not be created, although there exist some elements of agency." 2 C. J., 434, § 28. Since authority for the Act here provided for, viz.,

the taking out of insurance by the mortgage creditor, may legitimately be referred to the relation of lien debtor and creditor, there would seem to be no sound reason for holding that it was the intention of the parties to superimpose thereon such relationship of principal and agent as would make the act of the mortgagee in procuring insurance essentially for his own benefit the act of the mortgagor. If, therefore, the plaintiff was not charged with constructive knowledge of, and consent to, the alleged additional insurance by virtue of this written power conferred on the mortgagee, and if the additional inurance was, in fact, taken out without his knowledge and consent, and there was no acquiescence in or ratification of it by the insured, as there was evidence tending to establish, or if it covered merely the separate inurable interest of the mortgagee, then, under the law charged by the Circuit Judge, and not appealed from, there would not be a violation of the provision of the policy making additional insurance a ground of forfeiture.    In support of the rule as to knowledge and consent applied by the trial Court see note to *Humble v. German Alliance Insurance Co.* (Kan.), at page 632, Ann. Cas. 1912-D, and cases there cited.

In any view, therefore, we are of the opinion that, under the evidence adduced, the trial Judge could not properly have held, as a matter of law, that the policy in suit had been forfeited for violation of the provision against additional insurance.

The appellant's second contention (exception 3) is that a verdict should have been directed, in that it appeared from the undisputed evidence that at the time the policy issued by defendant was obtained, plaintiff concealed material facts and circumstances * * * in that his agent, Southern Auto & Supply Company, to procure said insurance, as well as the plaintiff himself, failed to inform the defendant of the existence of the two mortgages

on the truck, each for the full insurable value thereof, as well as of other insurance thereon," etc.

The provision of the policy as to incumbrances is as follows:

"Unless otherwise provided by agreement in writing added hereto, this company shall not be liable for loss or damage to any property insured hereunder, (a) while incumbered by any lien or mortgage."

It was provided by agreement in writing attached to the policy, "that any loss or damage that may be ascertained and proven to be due the assured under this policy shall be held payable to the Southern Auto & Supply Company, of Greenwood, S.C., as their interest may appear," etc. At the time the policy was applied for, the defendant had notice that the Southern Auto & Supply Company "had a purchase-money mortgage" on the truck. Through the loss payable clause inserted by defendant, with notice of the outstanding lien, the defendant must be held to have agreed in writing to be liable for loss or damage while the property was encumbered by lien or mortgage.

But appellant says that the failure of the Supply Company to inform defendant that there were two outstanding mortgages, and that there was another outstanding policy of insurance, was, as a matter of law, fraudulent concealment and misrepresentation that avoided the policy. The policy provides: "This entire policy shall be void if the assured has concealed or misrepresented any material fact concerning this insurance, or the subject hereof," etc. There was evidence tending to establish that on August 12, 1920, the date the policy was issued, there was but one valid outstanding purchase-money lien, or mortgage, on the property, and that this lien, the substituted sales agreement, was held in the name of the Supply Company. While this sales agreement appears to have been assigned to the Commercial Credit Company as of date

July 31, 1920, it does not appear that the Commercial Credit Company was as to that transaction without recourse on the Supply Company, nor that the Supply Company was thereby deprived of all insurable interest in the truck as a mortgage creditor. 26 C. J., 31, § 12; *Mahoney v. State Insurance Co.,* 133 Iowa, 570; 110 N. W., 1041; 9 L. R. A. (N. S.), 490. Hence, plaintiff contended that the representation made as to the outstanding purchase-money mortgage was substantially correct, and no fact material to the risk, as to incumbrances, was either misrepresented or concealed. Even in the view that knowledge of incumbrances on the part of the insurer is material to the risk as a matter of law (14 R. C. L., 1061, Sec. 238), the issue of fact here raised was properly submitted to the jury. See 26 C. J., 185, § 225.

As to the appellant's contention that the failure of the Supply Company to inform defendant that there was another policy outstanding on the property, was, as a matter of law, such fraudulent concealment as avoided the policy, it is to be observed that on August 12, 1920, when this policy was issued, it does not clearly appear from the evidence that the certificate of insurance alleged to have been issued by the World Auxiliary Insurance Corporation to the Commercial Credit Company had, in fact, been issued. While this certificate purports to insure the truck from July 31, 1920, the date of its issue is not given, but the date of the alleged mailing of a duplicate of the certificate to De Shields is given as August 26, 1920, some fourteen days after the date of the policy here involved. There was also evidence to the effect that, if the certificate issued by the World's Auxiliary Insurance Company was, in fact, outstanding, it had been issued without the knowledge or consent of the plaintiff.

The general rule is that a policy will not be declared forfeited for fraudulent concealment or misrepresentation as

to other insurance "where the other insurance exists without the knowledge or consent of insured" (26 C. J., page 188, § 228, and cases cited, note 78) or has, "been taken out without his knowledge by others interested in the property." 26 C. J., page 189, § 229; *Cowart v. Cap. City Insurance Co.,* 114 Ala., 356; 22 South., 574; *Nichols v. Fayette M. F. Insurance Co.,* 1 Allen (Mass.), 63. In the view that knowledge of the Supply Company, as agent, bound the plaintiff, as principal, it does not appear that the Supply Company had any knowledge of the existence of other insurance on August 12. Obviously, we think, under the facts in evidence here, the trial Judge could not properly have directed a verdict upon the ground that the policy had been forfeited for fraudulent concealment as to other insurance.

The appellant's third contention (exception 4) is that the policy was avoided, in that it appeared at the time of the loss the interest of the assured was not unconditional and sole ownership, but had been transferred and assigned to the Commercial Credit Company without the knowledge and consent of the defendant. There was evidence tending to establish that the defendant accepted the risk with knowledge that plaintiff's interest was not unconditional and sole ownership, and that there was no change in the nature of the plaintiff's insurable interest after the policy was issued. This exception does not charge that the terms of the policy were violated by assignment of the policy, but if it did, the charge would be without merit, as the evidence affords little, if any, basis to support an inference that the plaintiff had assigned the policy. The trial Court could not properly have directed a verdict upon the grounds here assigned.

The fourth proposition advanced by appellant (exception 5) is that the policy was avoided by the false statements under oath, contained in the proof of loss submitted by plaintiff to the effect "that at the time

of the fire or loss there was no other insurance on said truck, and that no other person had any interest in said truck by mortgage or otherwise than the Southern Auto & Supply Company." Generally speaking, to avoid a policy for false swearing in the proofs of loss, "the false statements must have been made intentionally and willfully"— must have been made, according to perhaps the greater weight of authority, "with intent to deceive or defraud," and "must be material." 26 C. J., 383, § 493; 14 R. C. L., 1343; note, 32 L. R. A. (N. S.), 453.

Whether the statements here attributed to the plaintiff were, in fact, false, or were material, or were willfully made with intent to deceive and defraud, involved the determination of disputed issues of fact, which the trial Judge properly submitted to the jury.

It is further urged that the trial Court committed error of law in not granting a new trial. The motion was based upon the grounds that the verdict was contrary to the law and the evidence, in that the amount of recovery was excessive, and in that the evidence established that the policy had been forfeited for fraud, and for violation of its terms, substantially in the particulars which have been considered in passing on the foregoing contentions directed to the refusal of the motion for a directed verdict. As to the amount of the verdict the insured was not conclusively bound by the value of the truck as stated in the proof of loss, unless the statement was fraudulently made, or the facts were such as to estop him from disputing it. 26 C. J., 381, Sec. 491.

Under the plaintiff's testimony to the effect that the valuation inserted in the proof of loss was agreed to in negotiations with insurer's agent merely for purposes of settlement without suit, and, in the absence of any showing that the insurer was thereby misled to his prejudice, the issue was clearly one of fact for the jury, and the Judge's

refusal to disturb the finding may not be imputed to him as error of law.

As to the other grounds upon which appellant contends that a new trial should have been granted, if the trial Judge committed no error of law in refusing to direct a verdict upon substantially the same grounds, as we have held, it follows that error of law may not be imputed in denying the motion for new trial.

That the Circuit Judge's action in refusing a motion for new trial in a law case, unless grounded upon a basis of fact wholly without evidence to support it, or manifestly controlled or influenced by error of law, is not reviewable in this Court, is too well settled to require citation of authority. *Turner v. Railway Company* (S. C.), 113 S. E., 360. The exceptions assigning error in the refusal of the motion for new trial (exceptions 6 to 10 inclusive) are overruled.

The only remaining assignment of error (exception 11) is directed to a criticism of a portion of the trial Judge's charge, which was as follows:

"Both of the mortgages introduced in evidence bear date prior to the issuing of the policy of insurance, and both of them are made payable to Southern Auto & Supply Company, and the policy of insurance allows the mortgaging of the property to Southern Auto & Supply Company, I charge you that the Insurance Company by its loss payable clause had knowledge of an interest of Southern Auto & Supply Company in the truck, and if that interest was knowledge of the mortgage or mortgages, then this would be no defense."

The error specified is that this was "a charge upon the facts, in that under the particular circumstances in this case it was a fact to be determined by the jury as to what interest, if any, the Southern Auto & Supply Company had in the truck, from which of the two mortgages such in-

terest was derived, etc. In argument, appellant's counsel, very properly, have not attempted to sustain the exception upon the ground specified, but have suggested that the statement that the policy "allows the mortgaging of the property," etc., was an erronenous construction, which trenched upon the province of the jury. It was the duty of the Court to construe the policy, and in holding that the clause making the loss payable to the Southern Auto & Supply Company "allowed the mortgaging of the property" to that payee, the Judge committed no error.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.